courts under settled rules of procedure. *Gilman v. Chicago Railways Co.*, 268 Ill. 305, and *Walter Cabinet Co. v. Russell*, 250 Ill. 416, amply sustain the foregoing legal conclusions.

The judgment of the Municipal Court is reversed and the cause is remanded.

*Reversed and remanded.*

---

**Royal Colliery Company, Appellee, v. Alwart Brothers Coal Company, Appellant.**

**Gen. No. 20,344.    (Not to be reported in full.)**

Appeal from the Muncipal Court of Chicago; the Hon. JAMES C. MARTIN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1914. Affirmed. Opinion filed February 16, 1916. Rehearing denied March 15, 1916.

### Statement of the Case.

Action by Royal Colliery Company, a corporation, plaintiff, against Alwart Brothers Coal Company, a corporation, defendant, to recover the value of certain coal sold by plaintiff to defendant. From a judgment for plaintiff for $1,155, defendant appeals.

The evidence showed that plaintiff was in the business of mining and shipping coal, having its mines at Virden, Illinois. Defendant was a coal dealer in the City of Chicago, and had a contract with the board of education to supply part of the coal used in the Chicago public schools. On the 25th day of July, 1911, plaintiff and defendant entered into a written contract whereby plaintiff agreed to sell, and defendant agreed to buy, approximately 20,000 tons of lump and egg coal at a price of $1.07½ per ton at the mines; said

coal to be shipped in approximately equal quantities (about 2,500 tons per month) between the date of the contract and March 31, 1912, as ordered, and payments to be made at Virden on the 20th of each calendar month for fifty per cent. of all coal shipped during the previous month; the balance to be paid for on the 10th of the second month following shipment.

In January, 1912, there arose between the parties some difficulty with reference to this contract. During the period that the school coal contract had to run, defendant needed certain coal known as "washed coal," however, the transaction for washed coal was to be considered separate and apart from the transactions involving the school coal contract. It was also understood that payment for the washed coal was to be made on the 10th of the month following shipment.

The evidence is undisputed that there was furnished by plaintiff to defendant washed coal as set forth in its statement of claim, amounting to $1,485.37, and that the coal represented by the first item was delivered on February 20, 1912.

During January, 1912, there was delivered to defendant on the school coal contract, coal valued at $1,817.08. Under the terms of the school coal contract there was due on February 20th the sum of $908.54. There was also due at this time $268.11 for washed coal delivered in January.

On February 20th defendant sent plaintiff a voucher check for $1,100, which voucher check stated that it was a payment "on account." This check was received by plaintiff and was paid in due course.

On June 15, 1912, defendant sent a voucher check to the plaintiff for the sum of $376.40. This voucher check had on its back the following memoranda:

"3/26  Bill rend.                    $1209.72
  3/7   Bill rend.                       121.66
  2/20  Bill rend.                       133.99
                                        ———————
                                         1485.37

| 1911 | | Cr. | | | |
|------|------|------|------|------|------|
| 10/5 | Cr. memo. 139 | | 4.49 | | |
| 26 | Cr. memo. 144 | | 13.92 | 18.41 | |
| | | | | | 1503.78 |
| 1911 | | | | | |
| 11/3 | Cash | | | 27.38 | |
| 1912 | | | | | |
| 2/21 | Cash | | | 1100.00 | 1127.38 |
| | | | | | 376.40'' |

This check was received and deposited by plaintiff and paid. It will be seen that the defendant in the voucher check applied the $1,100 payment of February 20th on the washed coal account.

It further appeared from the evidence that after the beginning of this suit, plaintiff, on October 15, 1912, began an action against the defendant in the United States District Court, in which suit plaintiff filed the ordinary common counts, alleging damages in the sum of $5,000. Defendant pleaded the general issue. That suit arose out of a controversy with reference to the school coal contract. After suit was begun in the United States District Court by plaintiff, defendant began an action in the Municipal Court of Chicago to recover damages which it claimed to have sustained because of plaintiff's failure to fulfil the school coal contract. This cause was removed to the United States District Court and the two cases were tried together.

Defendant claimed that in the trial of these two cases in the United States District Court, plaintiff admitted that the $1,100 paid on February 20th was applied on the washed coal account and not on the school coal contract; that according to plaintiff's accounts, there submitted in evidence, the $1,100 payment was not applied by plaintiff on the school coal contract; that all the coal ordered and delivered previously to Jan-

70       Appellate Courts of Illinois.

Royal Colliery Co. v. Alwart Brothers Coal Co., 198 Ill. App. 67.

uary had been paid for; that no coal was ordered under the school coal contract February 20th, and therefore plaintiff in that case was suing for only the coal ordered and sold during the months of January and February; that there was due for said coal not to exceed $3,523; that there was proven in that case damages not to exceed $1,200; that the interest due on any theory of the case could not have been more than $175, making a total of $4,898; that therefore the verdict for $5,081.95 rendered in the United States District Court proceeding could have been arrived at only on the theory that the $1,100 payment in question had not been applied on the school coal contract; that the judgment entered on said verdict was *res adjudicata* of that fact; that with the elimination of that question here, there was no further issue to be determined, consequently plaintiff had no cause of action, as the payment of $1,100 and the check for $376.40 constituted full payment of the amount due for washed coal, the subject-matter of the present suit.

Plaintiff contended that its suit in the United States District Court was not for the value of said coal at the contract price, but for the market value thereof, together with damages for defendant's failure to order coal in quantities provided for in the school coal contract, during the months prior to January; that it based its right to a recovery for damages upon an alleged breach of the contract by defendant; that the $1,100 payment was applied by it on the school coal contract, and that the jury in the United States District Court proceeding so found.

In support of their respective contentions, both parties introduced testimony as to the proceedings in the United States District Court, not only as to the evidence there offered, but also the rulings of the court thereon, the pleadings and the instructions to the jury. This testimony was given by the respective attorneys who represented the parties in the litigation

both in the United States District Court and in the proceeding at bar.

It appeared from the evidence that the testimony in the proceeding in the United States District Court showed that up to February 20th about 7,500 tons of coal had been delivered to defendant under the school coal contract, 3262.02 tons of which were furnished between January 12th and February 20th; that on February 20th defendant demanded that the balance of the coal due under the school coal contract (12,500 tons) be delivered during the remainder of the contract period, viz., by April 1; that upon plaintiff's refusal to comply therewith, defendant declined to order any more coal from plaintiff; that plaintiff claimed that the failure to order coal as provided for under the contract, at the rate of 2,500 tons per month, constituted a breach of the contract, by reason of which breach plaintiff had the right to recover any damages suffered as a result thereof, also for the coal delivered during January and February, on the basis of the market value, and not upon the contract price.

The evidence further showed that in the course of the trial in the United States District Court it appeared that after this contract had been entered into, the price of coal declined to a figure below the price therein provided for, during the months of August, September and October; that during said period, defendant's orders fell considerably below the monthly quota; that during November, when the price of coal rose above the contract price, defendant ordered 2,000 tons—nearly the full quota; that during December, when the price again declined, defendant ordered only 1,000 tons; that during January and February, 1912, when the weather became cold, the price of coal advanced sharply; that because of defendant's failure to order coal as contracted for, plaintiff had made certain contracts with other people, so that when defendant ordered in larger quantities in January, the plaintiff,

by reason of these emergency contracts, was unable to commence deliveries to defendant until January 12th; that the amount of coal delivered from January 12th to February 20th was practically on a basis of 2,500 tons per month.

It appeared further from the evidence in the case at bar that in the suit in the United States District Court, defendant's statement of claim in the Municipal Court of Chicago was introduced, showing the market price of coal during January and February was $2 and $1.75 per ton, respectively; that plaintiff introduced evidence showing the market price day by day; that defendant claimed the market price of coal during January and February ranged as follows:

```
"January  10 to 16 ..................$2.25 per ton
   do     16 to 25 ..................  1.75
   do     25 to 31 ..................  1.78
  Feby.    2 &  3  ..................  1.90
   do      4 to  9 ..................  1.65
   do     10 to 19 ..................  1.95
   do     19 & 20  ..................  1.60"
```

It further appeared that in the United States District Court, Paul J. Alwart, secretary of the defendant company, testified that the payment of $1,100 was originally intended as payment of the $908.54 due February 20th for January coal deliveries under the school coal contract, and an item of $268.11 due for washed coal, but that later, viz., in June, he applied the entire amount in payment of the sum due for washed coal, and that plaintiff acquiesced in such action. It further appears that defendant based its claim for the application of the $1,100 on the washed coal account, upon the fact that the voucher check for $376.40 showed that the $1,100 was applied by defendant to the payment of all washed coal. This was also testified to by Mr. Alwart in the case at bar.

It further appeared that in the United States District Court proceeding there was evidence that the

washed coal account was separate from the school coal contract, and that plaintiff and defendant had agreed that the washed coal account be taken care of independently of any difficulties arising with reference to the school coal contract; that A. J. Maloney, vice president of the plaintiff company, testified that the $1,100 was applied on the amount due for coal delivered in January on the school coal contract, and on the washed coal delivered in January; that afterwards (in May) the defendant, by separate check, paid for the washed coal delivered during January, whereupon the entire sum of $1,100 was applied on the amount due on the school coal contract. It further appeared that in the United States District Court proceeding, the question whether or not the contract had been breached was one of fact, and that the jury were instructed that if they believed from the evidence that the contract had been breached, plaintiff might recover the market value of the coal sued for.

On this state of the record, defendant contended: First, that its voucher check for $376.40 was tendered to plaintiff as a payment in full for the washed coal in question, this contention being based upon the fact that the voucher check contained on the back the memoranda set forth above; that plaintiff, by accepting this check acquiesced in the application of the $1,100 to the payment of the amount due on the washed coal account; that, in fact, the giving of this voucher check and the acceptance thereof constituted an agreement on the part of plaintiff to accept this check in full for the washed coal. And counsel for defendant argued that under the facts, the court should have held as a matter of law that this constituted a contract.

Defendant also maintained that the jury in the United States court proceeding had determined as a matter of fact that defendant had not been credited with the sum of $1,100 on the amount due under the

74    APPELLATE COURTS OF ILLINOIS.

Royal Colliery Co. v. Alwart Brothers Coal Co., 198 Ill. App. 67.

school coal contract, but on the contrary, that the jury by their verdict had found that plaintiff had applied said $1,100 in payment of the amount due on the washed coal account; that therefore such "essential fact having been determined by a court of competent jurisdiction may not be again passed on by another court in litigation between the same parties."

Defendant contended that, under the facts in evidence in the case at bar, it appears conclusively that the verdict of the jury (in the United States District Court proceeding) can only be reconciled with the theory that the plaintiff had not applied the $1,100 to the school coal contract.

JOHN A. McKEOWN, for appellant.

FRANK CROZIER, for appellee.

MR. PRESIDING JUSTICE PAM delivered the opinion of the court.

### Abstract of the Decision.

1. PAYMENT, § 36*—*when transfer of payment to different account not implied as matter of law.* The acceptance of a check which bears on it an indorsement stating that a previous payment had been made on a specified one of two accounts between the parties does not, as a matter of law, constitute an agreement that such application shall be made of the prior payment which had been previously credited to the other account, but the question as to whether such agreement arose is one of fact for the jury.

2. PAYMENT, § 29*—*when evidence sufficient to support finding as to application.* Evidence examined and *held* sufficient to support finding as to agreement as to application of payment.

3. ESTOPPEL, § 16*—*when question of estoppel by verdict for jury.* The question as to whether or not there is an estoppel by verdict is for the jury.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.